IN THE SUPREME COURT OF NORTH CAROLINA

No. 35PA16

Filed 9 June 2017

STATE OF NORTH CAROLINA

v.

WILLIAM MILLER BAKER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 781 S.E.2d 851 (2016), vacating in part defendant's convictions after appeal from a judgment entered on 8 August 2014 by Judge Paul C. Ridgeway in Superior Court, Wake County, and remanding for resentencing. Heard in the Supreme Court on 22 March 2017.

*Joshua H. Stein, Attorney General, by Anne M. Middleton, Special Deputy Attorney General, for the State-appellant.*

*Jennifer Harjo, Public Defender, New Hanover County, by Brendan O'Donnell, Assistant Public Defender, for defendant-appellee.*

ERVIN, Justice.

The issue presented for our consideration in this case is whether the record contains sufficient evidence to support defendant's conviction for attempted first-degree rape of a child in violation of N.C.G.S. § 14-27.2A(a).[1] In vacating defendant's attempted rape conviction, the Court of Appeals held that "[t]he State failed to

---

[1] The General Assembly recodified this offense as N.C.G.S. § 14-27.23(a), effective 1 December 2015. Act of July 29, 2015, ch. 181, secs. 5(a), 48, 2015 N.C. Sess. Laws 460, 461, 472.

present substantial evidence of all elements of" that offense. *State v. Baker*, ___ N.C. App. ___, ___, 781 S.E.2d 851, 856 (2016). After examining the record in light of the applicable legal standard, we conclude that the evidence adequately supported the jury's determination that defendant had committed the offense of attempted first-degree rape of a child in violation of N.C.G.S. § 14-27.2A(a) and reverse the Court of Appeals' decision with respect to this issue.

According to the State, defendant committed two specific sexual assaults against Amanda[2] between the dates of 1 April 2008 and 21 October 2009, one of which allegedly occurred in Amanda's bedroom and the other of which allegedly occurred on a couch in the family residence. At the time of these incidents, defendant, who had been born in 1981, was the boyfriend of Amanda's mother and lived in the family home with Amanda, her mother, and Amanda's two brothers, the younger of whom was defendant's son.

Amanda claimed that, during the summer of 2009, defendant entered her bedroom, in which she was lying on the bed; removed his own shorts and Amanda's shorts and underwear; and began touching her vagina. Although Amanda was "kicking and screaming" as he did so, defendant "put his penis in [her] vagina." Defendant's assaultive conduct ended when Amanda's mother, who had been sleeping

---

[2] "Amanda" is a pseudonym that we, like the Court of Appeals, have employed for ease of reading and to protect the identity of the child.

downstairs, entered the bedroom and discovered defendant, who was unclothed, with Amanda, whose shorts and underwear were around her knees. After making this discovery, Amanda's mother told Amanda to keep her door locked.

Amanda's mother described the bedroom incident in somewhat different terms. While sleeping on a downstairs couch during the summer of 2009, Amanda's mother heard what she believed to be her youngest child falling out of bed, as he had a habit of doing. After checking on the child and his brother, who were both asleep, Amanda's mother opened the door to Amanda's bedroom, in which she found defendant, who was asleep and clad in nothing other than his underwear, lying partially on Amanda's bed. Amanda's mother could not determine whether Amanda was clothed because she was lying face down on the bed beneath a blanket. According to Amanda's mother, defendant had a history of "blood sugar" problems and would, on occasion, get up in the night, act in an angry or disoriented manner, and pass out. Amanda's mother thought that defendant's presence in Amanda's room on the occasion in question resulted from just such a "low blood sugar" episode. Although Amanda told her mother that defendant had hurt her, she understood Amanda's statement to be focused upon the fact that defendant had collapsed on top of her, and she told Amanda to lock her bedroom door to prevent the recurrence of such an injury. Defendant, on the other hand, told Amanda's mother that he had no memory of what had caused him to be in Amanda's bedroom or what had happened there.

In the autumn of 2009, Amanda arrived home from school to find defendant in an intoxicated condition. As Amanda sat down on the couch to do her homework, defendant began touching Amanda's chest. Although defendant attempted to have Amanda lie down on the couch, she was able to move away from him after he appeared to have fallen asleep. When defendant sat up, Amanda grabbed a phone, fled to her bedroom, entered the closet, and telephoned her mother with a request that her mother have someone come get her. Amanda was subsequently picked up by her grandparents.

Amanda's mother, on the other hand, remembered that Amanda had called her at work in the autumn of 2009 and told her that defendant's conduct was frightening her. Although Amanda did not specify what defendant had done to frighten her, Amanda's mother honored her daughter's request that she be picked up.

Amanda claimed that, prior to the bedroom incident, defendant had committed repeated sexual assaults against her. According to Amanda, defendant had touched her, put his penis in her vagina, and "grabbed [her] from [her] arms and told [her] not to tell anybody." Although Amanda could not recall how old she was when these earlier incidents occurred, she knew that she "was little."

Amanda initially disclosed that she had been sexually abused during a conversation with some school friends during the fall of 2009. Even though a school counselor reported Amanda's allegations to Wake County Child Protective Services,

Amanda told both Danielle Doyle, an investigator with Wake County Child Protective Services, and Detective Peggy Marchant of the Cary Police Department that no sexual abuse had occurred. After receiving a new report that defendant had abused Amanda, Ms. Doyle and Detective Marchant spoke with Amanda again. Although she was initially hesitant to discuss sexual abuse-related issues during this interview, Amanda admitted that she was having nightmares, that she had not been sleeping well, and that her level of nightmares, including flashbacks about being touched, had been increasing as the date upon which defendant was scheduled for release from prison (in which he was serving a sentence based upon an unrelated conviction) neared. When Amanda disclosed incidents involving attempted penile-vaginal contact and the fondling of her breasts and genital area, Ms. Doyle terminated the interview and made an appointment for Amanda to be evaluated by SafeChild Advocacy Center.

On 21 November 2011, Sara Kirk, a child abuse evaluation specialist at the Center, interviewed Amanda. During that interview, Amanda stated that, a couple of years earlier, defendant had touched her in an inappropriate manner and attempted to put his penis in her vagina. In describing the bedroom incident, Amanda replied, "I don't think it did," when asked if defendant's penis had entered her private part. Amanda did not claim that defendant's penis had penetrated her vagina at the time of the bedroom incident until a 14 July 2013 meeting with investigating officers and representatives of the District Attorney's office.

Holly Warner, a nurse practitioner at the Center, found "no signs of acute, meaning recent, or healed trauma to [Amanda's] vaginal area." However, Ms. Warner also stated that such results were not uncommon even if vaginal penetration had occurred.

Jeanine Bolick, a licensed clinical social worker, conducted counseling sessions with Amanda from 8 May 2012 through 11 June 2013. In light of Amanda's reluctance to discuss sexual abuse-related issues and her tearful affect when the subject of sexual abuse was mentioned, Ms. Bolick diagnosed Amanda as suffering from post-traumatic stress disorder. On the other hand, Ms. Bolick admitted that she had not observed specific symptoms of sexual abuse during her sessions with Amanda and that post-traumatic stress disorder can have a number of causes.

Defendant denied that he had ever attempted to insert his penis into Amanda's vagina, that he had ever entered Amanda's bedroom for that purpose, or that he had ever touched Amanda inappropriately. In addition, defendant denied that there had ever been a time in the autumn of 2009 in which Amanda had been alone with defendant after returning home from school. Finally, defendant denied having ever passed out in Amanda's bedroom for reasons relating to his diabetic condition.

On 24 January 2012, the Wake County grand jury returned a bill of indictment charging defendant with attempted first-degree rape of a child in violation of N.C.G.S. § 14-27.2(a)(1) and taking indecent liberties with a child in violation of N.C.G.S. § 14-

202.1(a)(1). On 6 August 2013, the Wake County grand jury returned a superseding indictment charging defendant with three counts of attempted first-degree rape of a child in violation of N.C.G.S. § 14-27.2A(a), one count of first-degree rape of a child in violation of N.C.G.S. 14-27.2A(a), and three counts of taking indecent liberties with a child in violation of N.C.G.S. 14-202.1(a)(1). On 29 October 2013, the Wake County grand jury returned superseding indictments charging defendant with first-degree rape of a child in violation of N.C.G.S. § 14-27.2A(a), attempted first-degree rape of a child in violation of N.C.G.S. § 14-27.2A(a), and taking indecent liberties with a child in violation of N.C.G.S. § 14-202.1(a)(1), with all three offenses allegedly having occurred on or about 1 April 2008 through 21 October 2009. The charges against defendant came on for trial before the trial court and a jury at the 4 August 2014 criminal session of the Superior Court, Wake County. At the conclusion of the State's evidence and at the close of all of the evidence, defendant unsuccessfully sought to have the charges that had been lodged against him dismissed for insufficiency of the evidence.

At the jury instruction conference, the trial court indicated, without objection from either party, that it intended to inform the jury that, before the jury could convict defendant of any of the three charges that had been lodged against him, it had to find that each charge was supported by evidence relating to a separate, discrete event and that the verdict sheet would set forth "three counts," with there being "no lesser-included offenses that [the court was] aware of." The trial court

began and ended its instructions with respect to each of the substantive offenses that defendant had been charged with committing by stating that, in order to find defendant guilty, the jury had to find beyond a reasonable doubt that the conduct supporting the offense in question involved a discrete event that was separate from any of the events upon which the jury relied in convicting defendant of having committed any other offense. For example, the trial court instructed the jury with respect to the issue of defendant's guilt of attempted first-degree rape of a child that:

> The defendant has been charged with attempted rape of a child. For you to find the defendant guilty of attempted rape of a child the state must prove four things beyond a reasonable doubt:
>
> If you have found the defendant guilty of rape of a child in count one and/or indecent liberties with a child in count three, then the state must prove beyond a reasonable doubt that these four things in count two occurred on an occasion separate from the event you found to have occurred in count one and separate from the event you found to have occurred in count three.
>
> The state must prove beyond a reasonable doubt that, first, defendant intended to engage in vaginal intercourse with the victim. Vaginal intercourse is penetration, however slight, of the female sex organ by the male organ.
>
> Second, that at the time of the act alleged the victim was a child under the age of thirteen years.
>
> Third, that at the time of the act alleged the defendant was at least eighteen years of age.
>
> And fourth, the defendant performed an act that was calculated and designed to accomplish vaginal intercourse

with the victim and that such conduct came so close to bringing about vaginal intercourse that in the ordinary course of events the defendant would have completed the act with the victim had he not been stopped or prevented. Mere preparation or planning is not enough to constitute such an act, but the act need not necessarily be the last act required to complete the offense.

If you find from the evidence beyond a reasonable doubt that . . . in or about the period from April 1, 2008 through October 21, 2009 but if you have found the defendant guilty of rape of a child in count one separate from that occasion or if you have found the defendant guilty of indecent liberties with a child in count three separate from that occasion, the defendant intended to engage in vaginal intercourse with the victim and that at that time the victim was a child under the age of thirteen years and that the defendant was at least eighteen years of age and that the defendant performed an act . . . which in the ordinary course of events would have resulted in vaginal intercourse by the defendant with the victim . . . had not the defendant been stopped or prevented from completing this apparent course of action, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

On 8 August 2014, the jury returned a verdict finding defendant guilty of attempted first-degree rape of a child and taking indecent liberties with a child. In light of the jury's inability to reach a unanimous verdict with respect to the issue of defendant's guilt of first-degree rape of a child, the trial court declared a mistrial with respect to that count of the superseding indictment. After accepting the jury's verdict, the trial court consolidated defendant's convictions for judgment and sentenced defendant to a term of 240 to 297 months of imprisonment. Defendant noted an appeal to the Court of Appeals from the trial court's judgment.

In seeking relief from the trial court's judgment before the Court of Appeals, defendant argued, among other things, that the trial court had erred by denying his motion to dismiss the attempted rape charge for insufficiency of the evidence.[3]  More specifically, defendant contended that the evidence concerning the couch incident did not suffice to support an attempted rape conviction and that the evidence concerning the bedroom incident, when taken in the light most favorable to the State, showed that defendant had committed a completed, rather than an attempted, rape.  In addition, defendant argued that, to the extent that "the trial court's instruction permitted the jury to find the defendant guilty of attempted rape as a lesser included offense of rape," the delivery of that instruction constituted plain error.

Although the State argued that the record contained sufficient evidence to support defendant's attempted rape conviction, it appeared to concede that the testimony regarding the various statements that Amanda had made during the investigative process had not been admitted for substantive purposes and could not be considered in analyzing the sufficiency of the evidence to support defendant's attempted rape conviction.  In addition, the State acknowledged that, with respect to the bedroom incident, Amanda "did, in fact, testify to a completed act of vaginal intercourse."  Even so, however, the State maintained that the record evidence concerning both the bedroom and the couch incidents was sufficient to support

---

[3] Defendant did not challenge the validity of his conviction for taking indecent liberties with a child before the Court of Appeals.

defendant's attempted rape conviction. Finally, the State argued that the trial court had not erred, much less committed plain error, in the course of instructing the jury.

In the course of vacating defendant's attempted rape conviction, the Court of Appeals noted that the parties agreed that defendant's conviction could only be sustained on the basis of evidence concerning either the bedroom incident or the couch incident. *Baker*, ___ N.C. App. at ___, 781 S.E.2d at 855. Moreover, the Court of Appeals determined that the substantive evidence contained in the present record concerning the bedroom incident "could support a conviction for a completed rape" but did not constitute "substantive evidence of attempted rape." *Id.* at ___, 781 S.E.2d at 855 (citing *State v. Batchelor*, 190 N.C. App. 369, 373-75, 660 S.E.2d 158, 162 (2008)). Finally, the Court of Appeals determined that the evidence concerning the couch incident did not suffice to show that defendant had "intended to rape Amanda." *Id.* at ___, 781 S.E.2d at 856. As a result, the Court of Appeals concluded that the trial court had erred by denying defendant's motion to dismiss the attempted rape charge, declined to address defendant's challenge to the trial court's jury instructions, vacated defendant's attempted rape conviction, and remanded this case to the trial court for resentencing. *Id.* at ___, 781 S.E.2d at 856. On 9 June 2016, we allowed the State's discretionary review petition.

In the brief that it filed before this Court, the State argues that the Court of Appeals erred by vacating defendant's attempted rape conviction on sufficiency of the

evidence grounds given that prior decisions from both this Court and the Court of Appeals establish that evidence reflecting a completed rape can support an attempt conviction.[4] In response, defendant argues, among other things, that the decisions upon which the State relies "do not actually stand for the proposition that legally sufficient evidence of a completed crime will necessarily support a verdict of a lesser included crime" and that the State's contention "that evidence of the greater offense supports a verdict of guilt on the lesser offense cannot be squared with" this Court's decisions to the effect that, "where the evidence of the greater offense is positive and there is no evidence of the lesser included offense, the lesser included offense may not be considered by the jury and the defendant may not be convicted of it." In addition, defendant argues that the attempted rape charge was not submitted to the jury as a lesser included offense of rape and that the jury's inability to reach a unanimous verdict with respect to the completed rape charge shows that the jury had doubts about the veracity of Amanda's testimony. Furthermore, to the extent that the prior decisions of this Court and the Court of Appeals suggest that, despite the absence of any evidence tending to show that an attempted rape had occurred, any error in submitting the issue of a defendant's guilt of a lesser included offense was favorable,

---

[4] In addition, the State argued that the non-specific evidence concerning the history of defendant's assaults upon Amanda set out in Amanda's trial testimony and the evidence concerning the couch incident both provide independent support for defendant's attempted rape conviction. However, given our determination that the substantive evidence concerning the bedroom incident adequately supported defendant's attempted rape conviction, we need not address either of these additional arguments any further in this opinion.

rather than adverse to, the defendant, this Court has retreated from such statements in subsequent decisions. In defendant's view, a verdict convicting defendant of a crime for which there is no evidentiary support violates defendant's fundamental rights to due process and a unanimous verdict. Finally, defendant argues that, if the attempted rape charge had not been submitted to the jury, there is a reasonable possibility that the jury would have been unable to reach a unanimous verdict with respect to the completed rape charge or found defendant not guilty of that offense.[5]

> "In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." Substantial evidence is that amount of

---

[5] In addition to the arguments discussed in the text of this opinion, defendant has asserted, in reliance upon this Court's decisions in *North Carolina School Boards Ass'n v. Moore*, 359 N.C. 474, 614 S.E.2d 504 (2005), and *Weil v. Herring*, 207 N.C. 6, 175 S.E. 836 (1934), that the State waived the right to argue that evidence tending to show that a completed rape occurred sufficed to support defendant's attempted rape conviction given that the State failed to advance this argument prior to filing its discretionary review petition. However, neither of the decisions upon which defendant relies provides adequate support for this argument given that *Weil* involved a direct appeal from the trial court to this Court in which the appellant sought to raise an argument which had not been presented for the trial court's consideration, 207 N.C. at 10, 175 S.E. at 838, and *Moore* involved a situation in which the defendant-appellants sought to advance an argument based upon a state constitutional provision that they had failed to present before either the trial court or the Court of Appeals, 359 N.C. at 481, 510, 614 S.E.2d at 508, 526. In this case, however, the State, which was the appellee before the Court of Appeals, is challenging a decision of the Court of Appeals overturning a trial court decision in its favor. As a result of the fact that "[t]he question for review is whether the ruling of the trial court was correct" rather than "whether the reason given therefor is sound or tenable," *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (citing *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957)), *cert. denied*, 484 U.S. 916, 98 L. Ed.2d 224 (1987), and the fact that the State has consistently taken the position that the record evidence sufficed to support the submission of the issue of defendant's guilt of attempted rape to the jury, we do not believe that the State has waived the right to argue in support of the trial court's decision to deny defendant's dismissal motion that evidence that defendant committed a completed rape sufficed to support his conviction for attempted rape.

relevant evidence necessary to persuade a rational juror to accept a conclusion.

*State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (citations omitted) (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998)), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002).  In making this determination:

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980) (citations omitted).

"A person is guilty of rape of a child if the person is at least 18 years of age and engages in vaginal intercourse with a victim who is a child under the age of 13 years." N.C.G.S. § 14-27.2A(a) (2013).  " '[V]aginal intercourse' . . . means the slightest penetration of the sexual organ of the female by the sexual organ of the male."  *State v. Johnson*, 317 N.C. 417, 435, 347 S.E.2d 7, 18 (1986) (citations omitted), *superseded by statute*, N.C.G.S. § 8C-1, Rule 404(b), *on other grounds as recognized in State v. Moore,* 335 N.C. 567, 594-96, 440 S.E.2d 797, 812-14, *cert. denied*, 513 U.S. 898, 130 L. Ed. 2d 174 (1994).  "The elements of an attempt to commit a crime are:  '(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense.' "  *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (quoting *State v. Miller*,

344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996), and citing *State v. Ball,* 344 N.C. 290, 305, 474 S.E.2d 345, 354 (1996), *cert. denied,* 520 U.S. 1180, 137 L. Ed. 2d 561 (1997))).

In *State v. Roy*, defendant Roy was indicted for rape. 233 N.C. 558, 558, 64 S.E.2d 840, 840 (1951). However, the prosecutor elected to proceed against defendant Roy based solely upon a charge of assault with intent to commit rape at the time that the case was called for trial. *Id.* at 558, 64 S.E.2d at 840-41. In rejecting defendant Roy's challenge to the denial of his motion for nonsuit on appeal, which was predicated on the fact that all of the evidence showed a completed rape rather than an attempt, *id.* at 559, 64 S.E.2d at 841, we noted that "it is well settled that an indictment for an offense includes all the lesser degrees of the same crime," *id.* at 559, 64 S.E.2d at 841 (citations omitted); indicated that, "although all the evidence may point to the commission of the graver crime charged in a bill of indictment, the jury's verdict for an offense of a lesser degree will not be disturbed, since it is favorable to the defendant," *id.* at 559, 64 S.E.2d at 841 (citations omitted); and concluded that "[t]he evidence adduced in the trial below was ample to support the verdicts rendered," *id.* at 560, 64 S.E.2d at 841. As a result, this Court clearly held in *Roy* that evidence of a completed rape sufficed to support an attempted rape conviction.

Similarly, in *State v. Canup*, the prosecuting witness testified at trial that the defendant had "stuck his penis in her vagina" despite the fact that the grand jury had

indicted the defendant for attempted second-degree rape. 117 N.C. App. 424, 426, 451 S.E.2d 9, 10 (1994). In response to the defendant's argument that the evidence did not suffice to support his attempted rape conviction, the Court of Appeals stated that "[e]vidence that this defendant continued to pursue his malevolent purpose and achieved penetration does not decriminalize his prior overt acts" since "[t]he completed commission of a crime must of necessity include an attempt to commit the crime." *Id.* at 428, 451 S.E.2d at 11. According to the Court of Appeals, "nothing in the philosophy of juridical science requires that an attempt must fail in order to receive recognition." *Id.* at 428, 451 S.E.2d at 11 (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 612 (3d ed. 1982) [hereinafter *Criminal Law*]). However,

> [a] successful attempt to commit a crime will not support two convictions and penalties,[—]one for the attempt and the other for the completed offense. This is for the obvious reason that whatever is deemed the appropriate penalty for the total misconduct can be imposed upon conviction of the offense itself, but this does not require the unsound conclusion that proof of the completed offense disproves the attempt to commit it.

*Id.* at 428, 451 S.E.2d at 11-12 (quoting *Criminal Law* 612 (emphasis added and footnotes omitted)). As a result, the Court of Appeals determined that the record evidence "would have supported the defendant's being charged with either second degree rape or attempted second degree rape and convicted of either offense." *Id.* at 428, 451 S.E.2d at 12.

Approximately two decades later, the Court of Appeals held, in reliance upon *Canup*, that the evidence sufficed to preclude allowance of the defendant's motion to dismiss an attempted larceny charge for insufficiency of the evidence in a case in which the State had indicted the defendant for attempted larceny while all the evidence tended to show that a completed larceny had occurred. *State v. Primus*, 227 N.C. App. 428, 430-32, 742 S.E.2d 310, 312-13 (2013). In doing so, the court rejected the defendant's argument that guilt of the crime of attempted larceny requires that the defendant's act supporting the attempt charge fall short of the competed offense in order to be sufficient to support an attempt conviction, *id.* at 429-32, 742 S.E.2d at 312-13, a conclusion that accords with the modern view concerning criminal liability for attempt. 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.5, at 230 (2d ed. 2003) (stating that, "[a]lthough the crime of attempt is sometimes defined as if failure were an essential element, the modern view is that a defendant may be convicted on a charge of attempt even if it is shown that the crime was completed"). As a result, a careful review of the relevant decisions of this Court and the Court of Appeals demonstrates that evidence of a completed rape is sufficient to support an attempted rape conviction.

As defendant emphasizes, this Court has held that

> [w]here there is conflicting evidence as to an essential element of the crime charged, the court should instruct the jury with regard to any lesser included offense *supported by any version of the evidence.* If the lesser included offense

> is not supported by the evidence, it should not be submitted, regardless of conflicting evidence.

*State v. Jones*, 304 N.C. 323, 331, 283 S.E.2d 483, 488 (1981). For that reason, in the event that the State has elicited positive evidence of every element of the completed crime of rape and the defendant claims that his encounter with the alleged victim was consensual or never occurred, the trial court should not allow the jury to consider the issue of the defendant's guilt of the lesser included offense of attempted rape. *State v. Nelson*, 341 N.C. 695, 698, 462 S.E.2d 225, 226 (1995). "The rule that a jury can believe all, part, or none of a party's evidence," *id.* at 698, 462 S.E.2d at 226 (citing *State v. Faircloth*, 297 N.C. 388, 255 S.E.2d 366 (1979), *superseded by statute*, N.C.G.S. § 15A-924, *on other grounds as recognized in State v. Silas*, 360 N.C. 377, 627 S.E.2d 604 (2006)), "does not apply when to let it do so could result in the jury's finding of guilt of a crime which is not supported by the evidence of either party," *id.* at 698, 462 S.E.2d at 226. However, the decisions upon which defendant relies, including *Nelson*, 341 N.C. at 698, 462 S.E.2d at 226; *State v. Smith*, 315 N.C. 76, 102, 337 S.E.2d 833, 850 (1985); *State v. Horner*, 310 N.C. 274, 283, 311 S.E.2d 281, 287-88 (1984); *State v. Strickland*, 307 N.C. 274, 287, 298 S.E.2d 645, 654 (1983), *abrogated in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986); and *State v. Jones*, 249 N.C. 134, 139, 105 S.E.2d 513, 517 (1958), address whether the defendant was entitled to the submission of the issue of his or her guilt of a lesser included offense to the jury rather than the entirely separate issue of whether the evidence sufficed to support the defendant's conviction. For that reason,

the proper resolution of defendant's challenge to the sufficiency of the evidence to support his attempted rape conviction hinges upon cases such as *Roy*, *Canup*, and *Primus* rather than upon the decisions on which defendant relies.

Defendant's reliance upon this Court's opinions in *State v. Ray*, 299 N.C. 151, 261 S.E.2d 789 (1980), and *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991), which deal with the extent to which the erroneous submission of the issue of the defendant's guilt of a lesser included offense that lacked adequate evidentiary support constituted prejudicial error, is equally misplaced. As was the case with defendant's argument in reliance upon *Nelson*, *Smith*, *Horner*, *Strickland*, and *Jones*, the present case involves the issue of whether evidence of the defendant's guilt of the completed offense suffices to support an attempt conviction rather than the issue of whether the jury should have been allowed to consider the issue of the defendant's guilt of a lesser included offense that lacked adequate evidentiary support. As if that were not enough to render this case distinguishable from *Ray* and *Arnold*, neither of those decisions involved a situation in which the issue of the defendant's guilt of attempt was erroneously submitted to the jury despite the fact that all of the evidence showed the commission of a completed offense. Finally, although its decision is obviously not binding upon us, the Court of Appeals held in *State v. Wade*, 49 N.C. App. 257, 271 S.E.2d 77 (1980), *cert. denied*, 315 N.C. 596, 341 S.E.2d 37 (1986), that the defendant was not entitled to relief on appeal based upon the trial court's erroneous decision to instruct the jury concerning the issue of the defendant's guilt of

the lesser included offense of attempted rape in a case in which all the evidence tended to show that the defendant was guilty of a completed rape on the grounds that, "[i]f there were error from the instruction complained of, such was favorable to [the] defendant and harmless." *Id.* at 261-62, 271 S.E.2d at 80. As a result, *Ray* and *Arnold*, which address an issue that is not before the Court in this instance, have no bearing on the proper resolution of this case either.

Thus, for all these reasons, we conclude that the record evidence tending to show that a completed rape had occurred in Amanda's bedroom sufficed to support defendant's conviction for attempted rape and that the trial court did not, for that reason, err in denying defendant's motion to dismiss the attempted rape charge for insufficiency of the evidence. In addition, given the fact that the issue of defendant's guilt of attempted rape was not submitted to the jury as a lesser included offense of first-degree rape of a child, there is no need for further consideration of defendant's argument that the trial court committed plain error by allowing the jury to convict him of attempted rape as a lesser included offense of first-degree rape of a child. As a result, the Court of Appeals' decision vacating the judgment that the trial court entered based upon defendant's conviction for attempted first-degree rape of a child is reversed.

REVERSED.