IN THE SUPREME COURT OF NORTH CAROLINA

No. 221PA17

Filed 17 August 2018

STATE OF NORTH CAROLINA

v.

WILLIE JAMES LANGLEY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 803 S.E.2d 166 (2017), finding no error in part and vacating in part judgments entered on 28 January 2015 by Judge W. Russell Duke, Jr., in Superior Court, Pitt County, and remanding for resentencing. Heard in the Supreme Court on 16 April 2018.

> *Joshua H. Stein, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State-appellant.*
>
> *John Keating Wiles for defendant-appellee.*

ERVIN, Justice.

The issue before us in this case is whether an habitual felon indictment returned against defendant was fatally defective. After carefully considering the record in light of the applicable law, we hold that the habitual felon indictment at issue in this case was not fatally defective. For that reason, we reverse the Court of Appeals' decision to the contrary and remand this case to the Court of Appeals for consideration of defendant's remaining challenge to the trial court's judgments.

At approximately 10:30 p.m. on 24 September 2014, Jesse Atkinson, Jr., drove his father, Jesse Atkinson, Sr., and a friend named Kion in Kion's Honda Civic to Vance Street in Greenville for the purpose of buying marijuana. Upon reaching Vance Street, Mr. Atkinson, Jr., pulled up against the curb, at which point Kion exited the car, leaving Mr. Atkinson, Jr., in the front seat and Mr. Atkinson, Sr., in the back seat. After sitting in the car for about five to ten minutes, Mr. Atkinson, Jr., and Mr. Atkinson, Sr., observed a dark blue Nissan Sentra drive past the Honda, stop at a nearby corner, make a U-turn, and pull up beside the Honda facing in the opposite direction. Davron Lovick drove the dark blue Nissan Sentra, with defendant Willie James Langley occupying the front passenger seat.

As the Nissan Sentra neared the Honda, defendant jumped across Mr. Lovick and started shooting at Mr. Atkinson, Jr., and Mr. Atkinson, Sr., with either an AK47 or SKS rifle. After the shooting began, Mr. Atkinson, Jr., drove away while the Nissan continued to chase the Honda and defendant continued to fire at the fleeing vehicle. Defendant fired at least eight shots at the Honda, with Mr. Atkinson, Sr., sustaining gunshot wounds to his right calf and left thigh.

On 29 September 2014, the Pitt County grand jury returned bills of indictment charging defendant with assaulting Mr. Atkinson, Jr., with a deadly weapon with the intent to kill; assaulting Mr. Atkinson, Sr., with a deadly weapon with the intent to kill inflicting serious injury; two counts of attempted first-degree murder; possession of a firearm by a felon; discharging a weapon into an occupied vehicle; and having

attained habitual felon status. The indictment charging that defendant had attained

habitual felon status alleged, in pertinent part, that

> on or about the date of offense shown and in the County
> named above the defendant named is an habitual felon in
> that on or about September 11, 2006, the defendant did
> commit the felony of Felony Larceny, in violation of North
> Carolina General Statute 14-72(a), and that on or about
> February 15, 2007, the defendant was convicted of the
> felony of Felony Larceny in the Superior Court of Pitt
> County, North Carolina; and that on or about October 08,
> 2009, the defendant did commit the felony of Robbery with
> a Dangerous Weapon, in violation of North Carolina
> General Statute 14-87, and that on or about September 21,
> 2010, the defendant was convicted of the felony of Common
> Law Robbery in the Superior Court of Pitt County, North
> Carolina; and that on or about August 24, 2011, the
> defendant did commit the felony of Robbery with a
> Dangerous Weapon, in violation of North Carolina General
> Statute 14-87.1, and that on or about May 5, 2014, the
> defendant was convicted of the felony of Common Law
> Robbery in the Superior Court of Pitt County, North
> Carolina, against the form of the statute . . . and against
> the peace and dignity of the State.

The charges against defendant came on for trial before the trial court and a jury at

the 26 January 2015 criminal session of the Superior Court, Pitt County. On 28

January 2015, the jury returned verdicts finding defendant guilty as charged. Based

upon the jury's verdicts, the trial court consolidated defendant's convictions for two

counts of attempted first-degree murder, assault with a deadly weapon with the

intent to kill, and assault with a deadly weapon with the intent to kill inflicting

serious injury for judgment and sentenced defendant to a term of 238 to 298 months

imprisonment; sentenced defendant to a consecutive term of 110 to 144 months

imprisonment based upon his conviction for possession of a firearm by a felon; and sentenced defendant to a consecutive term of 110 to 144 months imprisonment based upon his conviction for discharging a weapon into an occupied vehicle. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

In seeking relief from the trial court's judgments before the Court of Appeals, defendant argued, among other things,[1] that the habitual felon indictment that had been returned against him was facially defective. According to defendant, "with respect to the second and third previous felony convictions alleged in the habitual felon indictment returned against [defendant], the previous offenses that he allegedly *committed* differed from the offenses of conviction." In defendant's view, the fact that the offense that defendant allegedly committed differed from the offense that defendant was allegedly convicted of having committed demonstrated that the habitual felon indictment failed to comply with the pleading requirements set out in N.C.G.S. 14-7.3 as construed in *State v. Cheek*, 339 N.C. 725, 729-30, 453 S.E.2d 862, 865 (1995). The State, on the other hand, argued that the habitual felon indictment returned against defendant did, in fact, comply with the requirements set out in

---

[1] In addition to the issue discussed in the text of this opinion, defendant contended that the trial court had erred by denying his motion for a mistrial and instructing the jury in such a manner as to constructively amend the habitual felon indictment. The Court of Appeals held that the trial court had not abused its discretion in denying defendant's mistrial motion and did not reach the issue of whether the trial court had constructively amended the habitual felon indictment in its instructions to the jury.

N.C.G.S. § 14-7.3 and sufficed to support the trial court's decision to sentence defendant as an habitual felon.

In its opinion, the Court of Appeals "order[ed] that the judgment regarding the habitual felon conviction be vacated and the case be remanded for resentencing on the underlying felonies without the habitual felon enhancement" on the grounds that "the trial court proceeded on a facially deficient habitual felon indictment." *State v. Langley*, ___ N.C. App. ___, ___, 803 S.E.2d 166, 167 (2017). In support of this determination, the Court of Appeals explained that, "for a habitual felon indictment to fully comport with statutory requirements there must be two dates listed for each prior felony conviction put forth in the habitual felon indictment—both the date the defendant committed the felony and the date the defendant was convicted of *that same felony* in the habitual felon indictment." *Id.* at ___, 803 S.E.2d at 171 (first citing N.C.G.S. § 14-7.3; then citing *Cheek*, 339 N.C. at 729-30, 453 S.E.2d at 865). More specifically, the Court of Appeals noted that, "[o]n its face, the indictment did not provide the offense date for Conviction 2 or Conviction 3. Instead, for both of these convictions, the indictment alleged offense dates for robberies with a dangerous weapon, and then gave conviction dates for two counts of common law robbery." *Id.* at ___, 803 S.E.2d at 171. According to the Court of Appeals, "[i]t would be an impermissible inference to read into the indictment that common law robbery took place on 8 October 2009 or 24 August 2011 because that is not what the grand jury found when it returned its bill of indictment." *Id.* at ___, 803 S.E.2d at 167. This

Court granted the State's request for discretionary review of the Court of Appeals' decision with respect to the validity of defendant's habitual felon indictment on 1 November 2017.

In seeking to persuade us to reverse the Court of Appeals' decision, the State argues that the Court of Appeals erroneously engrafted an additional requirement onto the statutory provisions governing the contents of an habitual felon indictment given that the applicable statutory language requires that the offense that the defendant allegedly committed be identical to the offense that the defendant was allegedly convicted of committing. The State contends that the insertion of this requirement into N.C.G.S. § 14-7.3 conflicts with this Court's consistent refusal to "engraft additional unnecessary burdens upon the due administration of justice," quoting *State v. Freeman*, 314 N.C. 432, 436, 333 S.E.2d 743, 746 (1985). According to the State, N.C.G.S. § 14-7.3 simply does not require that an habitual felon indictment identify the nature of the prior offense aside from alleging that it was a felony. In the State's view, the habitual felon indictment returned against defendant in this case adequately alleged that defendant had attained habitual felon status by alleging that defendant had committed and had been convicted of three prior felony offenses, specifying the date upon which each felony offense had been committed, asserting that the offenses in question were committed against the State of North Carolina, listing the date upon which each conviction occurred, and identifying the court in which defendant was convicted on each occasion, with the name of the prior

felony being mere surplusage unnecessary to the existence of a facially valid indictment.

Defendant, on the other hand, asserts that the mere fact that an individual has been convicted of three prior felony offenses does not suffice to establish that the individual in question is an habitual felon given that the felonies necessary to establish the existence of that status cannot overlap. For example, defendant notes that the second felony must have been "committed after the conviction of or plea of guilty to the first felony" and that the third felony must have been "committed after the conviction of or plea of guilty to the second felony," quoting N.C.G.S. § 14-7.1. In light of that fact, a valid habitual felon indictment must allege "both the date the defendant committed the felony and the date the defendant was convicted of *that same felony* in the habitual felon indictment," quoting *Langley*, ___ N.C. App. at ___, 803 S.E.2d at 171. In other words, in order for an habitual felon indictment to show that the prior felony convictions upon which the State relies do not impermissibly overlap, the dates upon which those felonies were committed and the dates upon which defendant was convicted of committing those felonies must be set out in that indictment. In defendant's view, the habitual felon indictment returned against him in this case is fatally defective because it did not provide conviction dates for the second and third of the three felony offenses that defendant allegedly committed, making it impossible to know whether defendant's second and third common law robbery convictions impermissibly overlapped given that the indictment did not

indicate when those two common law robbery offenses were committed, and because the indictment did not provide offense dates for the second and third offenses for which defendant was allegedly convicted, making it impossible to know whether defendant's second and third robbery with a dangerous weapon offenses did not impermissibly overlap given that the indictment did not indicate when defendant was convicted of committing those offenses.

"A valid . . . indictment is an essential of jurisdiction." *State v. McBane*, 276 N.C. 60, 65, 170 S.E.2d 913, 916 (1969) (quoting *State v. Morgan*, 226 N.C. 414, 415, 36 S.E.2d 166, 167 (1946)). "The . . . indictment must charge all the essential elements of the alleged criminal offense," *id.* at 65, 170 S.E.2d at 916 (citing *Morgan*, 226 N.C. 414, 38 S.E.2d 166), "in a plain, intelligible, and explicit manner," *id.* at 65, 170 S.E.2d at 916 (quoting N.C.G.S. § 15-153 (1969)).[2] "The purpose of an indictment 'is (1) to give the defendant notice of the charge against him to the end that he may prepare his defense . . . [and] (2) to enable the court to know what judgment to pronounce in case of conviction.' " *State v. Russell*, 282 N.C. 240, 243-44, 192 S.E.2d 294, 296 (1972) (quoting *State v. Burton*, 243 N.C. 277, 278, 90 S.E.2d 390, 391 (1955)). "[I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged. . . ." *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981). For

---

[2] The relevant statutory language has not changed since *McBane* was decided.

that reason, indictment drafting is "no longer bound by the 'ancient strict pleading requirements of the common law.' " *State v. Williams*, 368 N.C. 620, 623, 781 S.E.2d 268, 271 (2016) (quoting *Freeman*, 314 N.C. at 436, 333 S.E.2d at 746).

The content of a valid indictment alleging that a defendant has attained habitual felon status is specified in N.C.G.S. 14-7.3, which provides that the indictment "shall be separate from the indictment charging [that person] with the principal felony" and "must set forth the date that the prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place." N.C.G.S. § 14-7.3 (2017). In view of the fact that the ultimate question before us in this case is whether N.C.G.S. § 14-7.3 requires that an indictment charging that the defendant has attained habitual felon status must allege that the defendant committed the same felony offense for which he was ultimately convicted, we are required to interpret the relevant statutory provision to see if it embodies a requirement of the type for which defendant contends.

"Legislative intent controls the meaning of a statute." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (quoting *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998)). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, 'the spirit of the act and what the act seeks to accomplish.' " *Id.*

at 258, 794 S.E.2d at 792 (quoting *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001)). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). "[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citations omitted).

The language of the relevant statutory provision is clear, unambiguous, and requires no construction. N.C.G.S. § 14-7.3 states that an habitual felon indictment must set forth (1) "the date that prior felony offenses were committed," (2) "the name of the state or other sovereign against whom said felony offenses were committed," (3) "the dates that pleas of guilty were entered to or convictions returned in said felony offenses," and (4) "the identity of the court wherein said pleas or convictions took place." N.C.G.S. § 14-7.3; *accord Cheek*, 339 N.C. at 729-30, 453 S.E.2d at 865 (explaining that an "habitual felon indictment fully comports with the requirements of N.C.G.S. § 14-7.3 by setting forth the three prior felony convictions relied on by the State, the dates these offenses were committed, the name of the state against whom they were committed, the dates defendant's guilty pleas for these offenses were entered, and the identity of the court wherein these convictions took place"). The indictment at issue in this case alleged that the three prior felony offenses upon which

the State relied in attempting to establish that defendant had attained habitual felon status were committed on 11 September 2006, 8 October 2009, and 24 August 2011; that the offenses that led to defendant's felony convictions were committed against the State of North Carolina; that defendant was convicted of committing these offenses, the identity of which was specified in the body of the habitual felon indictment, on 15 February 2007, 21 September 2010, and 5 May 2014; and that each of these convictions occurred in the Superior Court, Pitt County. As a result, the habitual felon indictment returned against defendant in this case contains all of the information required by N.C.G.S. § 14-7.3 and provides defendant with adequate notice of the bases for the State's contention that defendant had attained habitual felon status.

In addition, we note that the habitual felon indictment returned against defendant in this case alleged that defendant had committed the offenses of robbery with a dangerous weapon and had been convicted of the lesser included offenses of common law robbery. "[I]t is well settled that an indictment for an offense includes all the lesser degrees of the same crime," *State v. Baker*, 369 N.C. 586, 595, 799 S.E.2d 816, 822 (2017) (quoting *State v. Roy*, 233 N.C. 558, 559, 64 S.E.2d 840, 841 (1951)), so that, "[w]hen a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser," *State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559 (1989) (quoting *State v. Weaver*, 306

N.C. 629, 633, 295 S.E.2d 375, 377 (1982), *abrogated on other grounds by State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993)). As a result, when defendant allegedly committed the offense of robbery with a dangerous weapon on 8 October 2009 and 24 August 2011, he also committed the lesser included offense of common law robbery. Thus, the Court of Appeals' statement that "[i]t would be an impermissible inference to read into the indictment that common law robbery took place on 8 October 2009 or 24 August 2011 because that is not what the grand jury found when it returned its bill of indictment," *Langley*, ___ N.C. App. at ___, 803 S.E.2d at 171, to the contrary notwithstanding, the habitual felon indictment returned against defendant in this case did effectively allege that defendant had both committed and been convicted of common law robbery.

As a result, for all of these reasons, we hold that the habitual felon indictment returned against defendant in this case was not fatally defective, reverse the Court of Appeals' decision, and remand this case to the Court of Appeals consideration of defendant's remaining challenge to the trial court's judgments.

REVERSED AND REMANDED.